4.50 is now in session with the Honorable Trustees Wayne and W. Mitchell at this recital. Good morning. Please be seated. Our clerk will call the cadence. 1-23-11-20 Carl Starr vs. Crescent Central and Suburban Hospitals Network. We have five minutes for rebuttal and if you could when you step up to the altar and just be sure to identify yourself for the record and you can start your last name. So with that we'll begin with the Council for the Accountable. Thank you. Good morning, Your Honors. Good morning, Council. May it please the Court. My name is Ian Jackson. I'm here on behalf of the petitioner-appellant Kerwin Cross. This case is before Your Honors today because the Circuit Court summarily dismissed Mr. Cross' post-conviction petition. Now, briefly on the legal standard here at the first stage, it's de novo. It's a low and liberal pleading standard. To advance the second stage, only one claim with an arguable basis in fact and law is to be made in the petition. And here Mr. Cross has satisfied that by raising these two issues brought forth in the appeal. And that's that as a legal statutory matter, the evidence was insufficient to prove his guilt under Count 5. And also that trial counsel should have subpoenaed certain medical records of the complainants. So this Court should therefore reverse and remand. Just to be clear, you're only saying his guilt on the aggravated circumstance. Correct. Thank you. And so based on the arguableness of those claims, this Court should reverse and remand for the proceedings. Before getting to those two issues, however, the Circuit Court did or its dismissal order did inject into this case sort of another legal issue, an unusual one. And the Court ruled at the outset that Mr. Cross judicially confessed to the crimes that he was convicted of when at his resentencing hearing, Mr. Cross's attorney read a letter in which Mr. Cross apologized and expressed remorse. So to the Circuit Court, this just barred. Can I ask you a few questions? No. Is this usual? Is this coming up a lot? Personally, I have not seen this. Okay. And... You are all set. What was the defendant apologizing for if it wasn't for the crime? Right. Well, so you can look at what he said and say, well, this is not inconsistent with the crimes charged and convicted here. However, it's also consistent with his testimony in the case. His testimony was not, I guess, a story of a lot of pro-social behavior. He was driving around at night intoxicated. He was looking for sex. He was offering money to women to have sex. And then over the course of this case, he learned, too, I think in a way that he wouldn't have reason to dispute that, in fact, Cece was not an adult but was underage. So there was an assortment of reasons that someone in his position might be apologizing, expressing remorse, and recognizing that... Well, if you read his letter against her statement, and her statement is, right out, you raped me, you caused me tremendous embarrassment, and then his letter says, I'm sorry I embarrassed you. Right? I mean, don't you have to read it in context? His statement is a response to her victim impact statement. I don't know if it's necessarily in direct response. It was a letter. Counsel read a letter. It was addressed to her. It was addressed to her in part, and it was addressed in part to the circuit court. Yes. So what we do have to look at, though, is what exactly a judicial confession is. Before we even get to that, all you're saying is insufficient is that a knife was used during the commission, and certainly there's nothing in that letter that is inconsistent with his claim here, which is there was no evidence that the knife was used during that rape. Right? And all you're saying is insufficient is the aggravating circumstance. That's correct. Nothing in his letter is the least bit inconsistent with his claim that there was insufficient evidence of an aggravating circumstance. That's correct. He could have raped her absolutely but not used the knife during the commission. Those are completely consistent, even if you say, I'm admitting that I raped her, which I'm not. I understand you're saying he's not saying. Right. But I agree with your summation of it. And that kind of gets to one reason that this was not a – that a judicial confession doesn't apply here. And I can say a little more about why I think what he said does not rise to the level of a judicial confession, but we also have a pretty big question of whether a judicial confession could do a couple things that the circuit court seemed to think it could do. One is that it could preclude a post-conviction petition in the first place. Unless you were saying that the confession was involuntary or unknowing, it would, unquestionably, because you could never establish a constitutional injury. You could never establish prejudice. It's no different than a formal guilty plea in terms of how it operates. What's your question, Your Honor? It's not a question. It's your statement that it wouldn't be a bar. I understand that. Help me understand. Why wouldn't it be? So here's how I arrive at that. People Be Green appears to be sort of a seminal case for what a judicial confession is and how the Illinois Supreme Court handles judicial confessions. And that case was a direct appeal. And it was there were the court said, you know, a judicial confession is the sort of ultimate example of it is a guilty plea. But there are other forms of judicial confession that have a similar effect of substituting for proof at trial, proof of guilt. Well, they said that because the issue in the case was a sufficiency challenge. It's not limited to that. Well, I will agree that the court did not say this could not bar other claims. But the court did simply analyze it on the terms of the situation. It was addressing the issue that was before. That's right. That's right. And so the circuit court and the state also have not actually set forth law that would say a judicial confession, again, arguendo. I do have a question. We don't have to decide that in this case, do we? We don't have to decide how far beyond sufficiency claims judicial confessions go. I agree with that, Your Honor. So, again, because I argue that a judicial confession does not and should not bar a post-conviction claim. Another reason for that is the development of subsequent Illinois Supreme Court law, which although it does not directly address judicial confessions, the strong implication is that it should be allowed to go forward. And that's the likes of P. B. Reid in 2020 who said that, you know, an individual who pleads guilty may nonetheless file not only a post-conviction petition. So they've done a judicial confession. They may file a post-conviction petition. They may also pursue an actual innocence claim. And then as to Justice Nicholas' point, whether or not it's a judicial confession should not bar consideration of this legal, statutory issue of whether the proof for the requisite elements on the aggravated count were met. So why don't you spend a few minutes on that? On the statute? Okay. On another one. Yes. So just to be clear, interpreting the aggravated criminal sexual assault statute. Yes. So this issue asks sort of the question, what does it mean in the context of the aggravated criminal sexual assault statute for an aggravating element to exist, quote, during the commission of the offense? And more specifically here, does the display of a knife exist during the commission of the offense if it is displayed only after the charged sexual penetration of the underlying criminal sexual assault has ceased? Now, the plain statutory language shows that the answer to this question is no. And the case is that holding otherwise, that it's yes, are unfaithful to the statute and should not be followed. Can you speak about the 1998 amendment to the statute and how that implicates any of this? Yeah. So prior to 1998, the aggravating elements at that time were listed in the statute. This language existed during the commission of the offense that applied to all of the subsections. In 1998, the legislature added subsection A-7, which relates to drugging the victim. And at the top of the aggravated criminal sexual assault section there, it says for A-7, the we're not working with during the commission of the offense, the governing languages during the course of the offense. And. During the same course of conduct. Course of conduct, excuse me. Thank you. As the commission of the offense. Occurs part of the same course of conduct as the commission of the offense. Yes. So as I've argued in the briefs and I maintain today, the statutory language has always been clear that during the commission of the offense does not cover the time after the completion of the sexual penetration, after it ceases. And lest there's any doubt about that, there's the legislature's addition of A-7 in 1998. And I'll also note, too, actually existing, you know, decades before at the time of People v. Cawley and some of these other decisions that said, oh, during the commission of the offense, it's the same thing basically as the same course of conduct. Although they never actually even draw such a clear parallel. They just kind of slip into analyzing different language. But even back in the time of Cawley as today and as the time of Mr. Cross's case, there was subsection A-4 in the aggravated criminal sexual assault statute. And that says that it's an aggravated offense if the person commits the criminal sexual assault during the course of committing or attempting to commit any other felony. So that's further evidence that the legislature, in drafting the statute, knew very well the different meanings of these terms. And when they saw fit, they used the course of conduct to wrap in sort of a larger temporal reach. And, in fact, in this case, the state charge, Mr. Cross, one of the counts that they nollied before trial was A-4. I believe related to the charge that came sort of temporarily after the sexual assault, which was the aggravated kidnapping. But, again, the state nollied that, and they went forward for seeking this charge under Count 5. I would guess because it does come with this 10-year add-on to the statute. I want to say a little bit about sort of the underlying criminal sexual assault statute, and, relatively, people be SNF. So criminal sexual assault, at least in this context, is the defendant commits an act of sexual penetration, which, of course, has a particular statutory definition, and uses force or threatens force. And that also has its own particular statutory definition. And so sort of the plain language of that indicates, you know, saying one thing and the other, a concurrent occurrence. And so I think that's where people be SNF comes in to help clarify. And that doesn't speak directly on point to this case, of course, but it helps understand where force or threat of force does begin for purposes of the offense of criminal sexual assault. And as this Court said in Smith, and as this Court also followed suit in Streeter, the force or threat of force basically necessarily precedes the act of sexual penetration by at least some amount of time. And those things are done on the way to accomplishing the sexual penetration. So when you have a situation like this, where there's the, you know, So here there's the count five is sexual penetration, Mr. Cross contacting Cece's vagina. And... Then he did something that she didn't like, and so then she bit him. Right. Then he pulled the knife. Right. But importantly, you know, the way the record shows... According to her testimony, she didn't like any of this. But then he did something that particularly irritated her, and that's when she bit him. Yes, and so we have from her testimony that he put his penis inside her vagina, and she was struggling, and he tried to turn her over, and she, I think in her words, she says she went crazy, she was struggling. And at that point, Mr. Cross, according to her testimony, attempted to put his penis into her anus. And that's actually the basis for a whole other act and charge in this case for attempted aggravated criminal sexual assault. As it was attempted, it was not accomplished. She struggled, she bit his hand really hard, and he got off the bed and then pulled out the knife, which up to that point had not been evidenced. And at that point she threw up, and then, you know, we don't know what his intentions might have been in displaying the knife at that time, but there were no further acts of sexual penetration, either attempted or accomplished. What's your response to the state's argument in the trial court's position that it didn't matter, he would have gotten the same sentence no matter what? Right, so this kind of speaks to prejudice, as this is brought in in the Ineffective Assistance of Appellate Counsel. Two things to that. One is that the Ineffective Assistance of Appellate Counsel standard asks whether the claim not raised had a reasonable probability of success. And then on the prejudice side of that is basically would the conviction have been reversed? And so here, yes, count five could not survive. It would have been reversed, and that is enough to answer the question of prejudice. Whether it would have changed the sentence or not. Whether it would have changed the sentence or not. But, you know, the state sort of speculates and says, oh, this judge, you know, wanted to give him this total sentence no matter what. I don't think, for one, that's not, we don't know that from the record, and I think actually what we do have from the record indicates otherwise, and that's because the judge actually was, you know, articulated that the sentence imposed is, I'm talking about here on resentencing, 25 years plus the 10-year add-on. Moreover, you know, at this juncture in particular, there is no means for a legal sentence to be imposed that would increase the sentence to make up for the loss of the aggravation. Right. Even at this point, if it were reversed, you couldn't, you couldn't make it up. You couldn't, you couldn't, yeah. But you couldn't give him the same sentence. But you couldn't make up for it. Right. Is there any precedent that you're aware of in Alaska State the same thing that allows the trial court to supplement the record by saying this is what I would have done if on a post-conviction? Just say that now. But, I mean, we look at the trial court record to figure out what happened. I've never been asked to look at what the trial court judge says at a post-conviction hearing that he would have done if back then. But are you aware of anything like that? I'm certainly, I'm certainly not aware of anything at the first stage that would, that would sort of contemplate that being appropriate. I mean, at the first stage you can look to see if a claim is rebutted by the record, but you're looking at the trial court record. Exactly. You know, so where we might see a judge doing more to consider their recollection of the case obviously comes up later in an evidentiary hearing where they recall, assuming it's the same judge, they recall viewing the witnesses and interacting with them. And that could assist their, you know, credibility determinations. But we're not dealing with any of that here, of course. We're dealing with a very strictly legal issue about just the sufficiency of the evidence. Briefly, sorry, how am I on time, if Your Honors know? You've got about three minutes. Okay. But you don't need to use microphones. That's true. I would like to, however. He's a lawyer. Sorry. Just a brief little bit on this issue about the medical records. Before trial, just a little quick factual overview. Before trial the State moved in limine to bar questioning of CeCe about her mental health history. Why? Because the medical records that we're exchanging discovery contain info that CeCe had bipolar disorder, had been previously hospitalized at a particular hospital for behavioral issues, and that she had not been prescribed psych medications for over one year. The defense objected. The court granted the motion. And Mr. Cross now says, you know, counsel should have sought a subpoena for these records. And this claim, too, is arguable. I think a really important case to focus on here is not people, but Pennsylvania v. Ritchie, the United States Supreme Court case. And there it was not in a collateral context, but it was on direct appeal. The defendant had already been convicted of sex crimes against his daughter. And during the proceedings in the trial court, the defendant had sought what we call DCFS-type records, a file for the immediate charges and also certain records that he claimed were compiled in an earlier year when the agency had been investigating a different report. And Ritchie argued that he was entitled to the information because the file might contain the names of favorable witnesses as well as other unspecified exculpatory evidence. And the United States Supreme Court says, okay. And they remanded. They were basically a special remand there on direct appeal for compliance with the subpoena and the circuit court's in-camera review of those documents to assess their materiality. And the court recognized that kind of in a similar situation to Mr. Cross here, before disclosure and before the in-camera review, it's not, as the court said, impossible to say if the records may ultimately be relevant to the defendant's claim of innocence. But in this case, you have two additional hurdles, right? You've got to have ineffective assistance of appellate counsel for not having ways to claim that trial counsel was ineffective. Right. Those were hurdles that were before the court didn't. That's right. However, here, what I'm doing here on appeal is operating on the record as it existed at the time of direct appeal. And based on the information, though not detailed, of course, what information there was about this mental health history, bipolar disorder, unspecified, which category of it it was, that that was enough to satisfy the more common just basis for issuing a subpoena. It appears relevant. It's in good faith. It's not done as a fishing expedition. And moreover, there is this protection of the trial court taking the records and conducting its own in-camera materiality review, where the parties can make their arguments about what should be looked for, but, you know, it ends up a lot coming down to what the trial court determines could be material. So there's not an initial materiality consideration that Mr. Cross needs to satisfy on direct appeal. Counsel could have asked for the same sort of special remand that was ordered in Pennsylvania v. Ritchie. I imagine I'm at time here. So just to sum, Mr. Cross respectfully asks that this Court reverse the summary dismissal and remand for second stage proceedings. Thank you. May it please the Court. Dan Fuglovichuk on behalf of the people. My last name is spelled P-I-W-O-W-A-R-C-Z-Y-K. Direct appeal counsel was not arguably ineffective for failing to make a doomed challenge to the dangerous weapon element of defendant's aggravated criminal sexual assault conviction. The Colley line of cases was the applicable law at the time of defendant's direct appeal, and it remains good law today. Under the Colley line of cases, two elements were required for an aggravated factor under Section 130A to occur during the commission of a criminal sexual assault. First, it was part of an unbroken series of events, and second, it was both very near in time and closely linked to the forced sexual acts. It is apparently uncontested in this case that defendant's challenge would have failed if the Colley standard had been applied in defendant's case. The victim began to struggle when the defendant attempted to anally penetrate her. So he grabbed the knife and pressed it against her back in order to regain control of the situation. This is an archetypal example of the use of a dangerous weapon during a criminal sexual assault. What about the 1998 amendment, which was post-Colley and certainly pre-the appeal in this case? The 1998 amendment has absolutely nothing to do with this situation. Number one, defendant makes a big deal about the use of the term during the course of the offense versus during the commission of the offense. But when Colley was written in 1989, those two words were absolutely appropriate to use interchangeably for each other. And when the 1998 amendment came along, they were dealing with situations where victims were being drugged and then subsequently criminally sexually assaulted, a completely different situation. And they used a completely different phrase because, as Your Honor pointed out, the phrase that they used was during the same course of conduct as the commission of the offense. So they didn't use just commission during the commission or during the course. They used both. So there's nothing about that 1998 amendment that has anything to do with the Colley line of cases that starts in 1989 and goes on to current. But that case, the 2022 case, was not that the weapon was actually used to achieve the sexual assault. I mean, well, they might have cited Colley, but they didn't cite Colley for the proposition you want to cite Colley for. Well, I respectfully disagree with you. I think that Colley absolutely involves the use of a weapon after the sexual assault, which is the same situation that you have here. And but you also have a series of cases leading up to that. I would emphasize Thomas, a First District case from 1992, as a crucial example of exactly what I'm talking about, because that case clearly articulates the two elements that I just talked about. And in that case, the defendant burned the victim with a barbecue fork after the forced sexual penetration was over. And before the other one occurred. In between sexual assaults. There's a whole lot of things in between. You have forced forced vaginal penetration. Then you have the victim moved to another room. Then you have the defendant leave that room, bring another man into that room. You have the defendant forced the victim to perform oral sex on that other man. Then the other man left the room. Then the defendant threatened to assault the victim with a broomstick. Then he burned the victim with the barbecue fork. Then committed another sexual assault. That wasn't the sexual assault. That was aggravated. No, it wasn't. In Thomas, the aggravated sexual assault was based off of the first one. He was convicted of aggravated sexual assault for the original vaginal penetration. And the aggravated part of it was the burning of the fork that came after all of those other things in between. And that's why Thomas is so relevant to this case. And Thomas directly followed Colley. And it's that line of cases, both Thomas and Colley, that gets cited in Calderon. And yes, Calderon has some complicated facts. And you can try to point at other circumstances because criminal sexual assaults are messy. And you do have multiple attempts and you have multiple threats. And that's actually part of the problem with the defendant's whole argument. And I wrote this down when I was looking at the defendant's reply brief this morning. Because in his reply brief, he compares the difference between robbery and criminal sexual assault. And he talks about how with a robbery, you have a situation where the legislature intends to have the use of a weapon at the end of a robbery, even during the making good of an escape, become an armed robbery. But somehow, as soon as the penetration ends in a criminal sexual assault, if someone pulls out a knife after the criminal sexual assault, as long as the penetration ended, then suddenly that doesn't become an aggravated criminal sexual assault with a deadly weapon. And his explanation for that is, and I'm quoting him here, that the defendant claims that the criminal sexual assault statute need not be concerned with how a sex offender exits the scene or escapes. What occurs after the sexual penetration is a matter apart from the statute's target conduct. I mean, I think he's contrasting robbery where getting away with the goods is part of the crime. Right, exactly. But the thing is that when your honor points out that in Thomas there was another sexual assault. So it's a whole course of conduct. It's a whole ongoing crime. Yeah, if only it was so easy to say that it doesn't matter how a sexual offender exits the scene. If only it were that easy, because that's not what happens. In these cases, in Smith, in Colley, in Thomas, what happens is the defendant doesn't just exit the scene. He remains. He continues to humiliate. He continues to victimize. He bums victims with a fork. He makes them eat the milk that they wrote to the defendant months earlier, breaking up with them. That is why the legislature in Colley explained when it was reading the plain language of the statute, it said that the plain language of the aggravated criminal sexual assault statute was obviously to protect victims from sex offenders. And it wasn't going to draw a bright line between the end of penetration and the end of the offense. Because if the force is continuing, and the force is an element of the criminal sexual assault, it's just as much of an element as the sexual penetration. So if the force is continuing, then the offense is continuing. And if the offense is continuing, then it can continue to be the exploitation. It can continue. It's absurd to suggest that the victim isn't in danger and doesn't need protection just because suddenly the sexual assault is over. I'm going to stop you. I think you have a very strong argument, and you can make it on your motion to dismiss. But we're talking about a gist here. And there are cases that go the other way and draw a temporal line when the sexual assault is over. And we can debate those cases all you want. You have cases that I think you could say apply here, but we're talking about a gist. I don't know what gist. You don't know what a gist? There are no cases that support the argument that the assault itself is done and that, therefore, the aggravating circumstance is not part of the assault? I think that the law is very, very clear, Your Honor, that the Cowie line of cases was the only applicable law in 2019 when defendant's direct appeal was decided. And if the defendant's direct appeal counsel had raised the issue that the defendant is saying his direct appeal counsel was ineffective for raising, it would have been dismissed as meritless for the same reason that it failed in all of these other cases. And I don't think that there is any analogous case out there. And it would have to be an analogy to whatever cases you're referring to, Your Honor, because the cases that are directly on point fail. Smith, the defendant talks about Smith. It's absolutely paradoxical that the defendant relies on Smith because Smith is the case that the circuit court relied on to dismiss the defendant's petition. Smith is, yes, it is factually distinguishable for the simple fact that the knife was displayed before the sexual penetration instead of after. But the reasoning of Smith doesn't help the defendant at all. The reasoning of Smith destroys the defendant. Smith says that criminal sexual assault is not just sexual penetration. It's also force or threat of force. Smith says that criminal sexual assault does not begin and end at the point of sexual penetration. Based on this, Smith categorically rejected the claim that the defendant had to display the knife during the sexual penetration in order to be guilty of criminal sexual assault with a dangerous weapon. So whether or not the knife could have been displayed after the sexual penetration wasn't raised in the facts of Smith. But based on if you look at the reasoning of Smith, if that fact had been raised, it absolutely would have been accepted. And the defendant talks about the plain language. And he talks about Gerard. And he talks about how the plain language is inconsistent with Cowley. But Cowley is absolutely based on the plain language. And if you look at Gerard, the definition of during the commission of the offense is while the offender is engaging in the conduct that constitutes the offense. And the conduct that constitutes the offense of criminal sexual assault is both the sexual penetration and the use of force or threat of force. And the use of force or threat of force can start before the sexual penetration and it can end after the sexual penetration. And that's where the whole line of Cowley cases comes from is this court's continued recognition that sexual penetration is not the beginning or the end of criminal sexual assault. Smith recognizes that it can start earlier. Cowley, Thomas, and a whole series of other cases recognize that it can continue on afterwards. And we also know that simply from the basic circumstances of all the unfortunate cases that we see in front of us where criminal sexual assault and the force involved doesn't simply end at the moment that the penetration ends. In this case, after the penetration ended, the defendant tried to anally penetrate the victim and then at knife point forced her into a car. And it wasn't until she was... The knife was not displayed until after the attempted anal penetration. You agree with that, correct? So he attempted to anally penetrate her. Then he grabbed the knife. She bit him. Then he grabbed the knife. He grabbed the knife. He tried to regain control of the situation. He tried to force her into the car. But he continued to attempt to anally penetrate her while he had the knife. He put the knife on her back. He was convicted of attempted aggravated criminal sexual assault with the knife as well. The defendant's not challenging that conviction. So attempted aggravated criminal sexual assault with a deadly weapon. The attempted anal penetration with a knife. That is, he was found beyond a reasonable doubt of that as well. They were in the bedroom and when he put the knife on her back, that's when they were... That was immediately before they were leaving the bedroom. They were still in the house before they got to the car. Right. So when he put the knife on her back, he was still in the process of trying to anally penetrate her at that point. And at some point then he decided that the police were coming and she vomited. And then he, at knife point, told her to put on his coat or something and forced her into his vehicle. And then he shoved her out of his vehicle. And that's when the force ends. The force ends in this case. The force of the criminal sexual assault ends when he shoves her out of his vehicle. That's when he can no longer continue to victimize her and humiliate her and do all the things that he'd been doing up to that point. And that is when the legislature's intent to protect a victim of criminal sexual assault ends as well. I realize that I've spent a lot of time talking about this one issue. I think it is the most important issue in this case. I think that the judicial confession issue is a little bit of a sideshow that this court doesn't necessarily need to visit. But briefly, I wonder if it's – Because if the petition is frivolous, it kind of doesn't matter is what you're saying. Exactly. Exactly. The defendant hasn't shown that the appellate counsel was arguably deficient. So it ends there. But I do want to respond to the arguments that opposing counsel has made here. And I especially want to respond to Your Honor's argument. I have an argument. I apologize. I want to respond to Justice McFarland, your comment concerning whether or not the judicial confession would apply to the knife-aggravating factor. And I strongly believe that if you do conclude that there is a judicial confession, then it would apply to that as well. Because the defendant knew what he was charged with. He knew what he was convicted of. He knew what – and so when he was at resentencing, after he had heard the victim impact statement re-read, and when he made that statement, he was given a full apology. He was given contrition for what he had been charged with and what he had been convicted of. And he largely, because of that contrition, got 20 years longer on his sentence than the – he went from 70 to 50. And if he had said, well, I don't still owe it to the knife, like, I don't think that I should have been convicted of aggravated criminal sexual assault based on the knife, there's no way the judge would have reduced it. So he knew that what he was doing was taking responsibility for aggravated criminal sexual assault with a deadly weapon. Let me ask you, and I don't think we have to reach all these questions in this case, but, you know, there's a lot of emphasis at sentencing on remorse and contrition. And how does a defendant achieve that and not risk foreclosing claims and post-conviction claims, in your view? I mean, I know you don't – Don't stop your colleague. I think you – I'm at a loss as to how I would advise someone on that. I would tell them not to commit crimes. A little late by the time you're in the picture. I do want to – on the prejudice argument, Your Honor seemed a little bit persuaded by the idea that the defendant couldn't be resentenced to the same 35-year sentence on Count 8, which is the aggravated criminal sexual assault based on bodily harm. And that argument is simply not – there's absolutely no merit to that argument, because under the statute that the defendant cited in his brief, it only prohibits the imposition of a more severe sentence based on the same conduct at a new sentencing hearing. So if the defendant goes back and gets resentenced for the merged aggravated criminal sexual assault count, which would be the aggravated criminal sexual assault bodily harm count, he absolutely could get the same 35-year sentence that he got for an aggravated criminal sexual assault with a deadly weapon. Well, if all that happens, which would require that the conviction get vacated, blah, blah, blah, blah, I don't know. I mean, I don't know if that's true, because I can see the argument on the other side, that you're actually increasing the punishment because it was special on appeal. You're increasing the punishment on the other – But we don't have to decide that. We don't necessarily need to. What about my other question, which is actually more troubling to me, which is the trial court saying, this is what I would have done if. Is that okay? Why is that okay? I wish I'd had that question in my mind when I was preparing for this, because I really feel like I could have had some good cases for you. I'm sure you would have. But all I can offer you is the underlying concepts that I feel support my perspective, which is that there's a reason why we send post-convictions back to the same judge, which is that we are taking advantage of the fact that they know the case, that they are the ones who passed the original sentence, and so we're relying on them to provide that insight. And so the fact that the judge knows that he wanted to give that act of forceful sexual penetration 35 years, and he's looking at it and saying, I don't care if it had a 10-year enhancement, because I gave him 25 on the underlying criminal sexual assault, so that way I could give him 35 total. And if now I'm sentencing him to count eight that doesn't have the enhancement, I'm still going to give him 35 years. I think that's the kind of thing that we are intending to have happen when we make sure that post-convictions go back to the same judge who originally handled it. I get the sense that Your Honors don't want to hear from me about the mental health issue. I'll just briefly say then that this was a fishing expedition that the attorney wasn't required to do. It's complete speculation that there would have been anything. A bipolar diagnosis that predates the attack by more than one year is not relevant to credibility, and the defendant has not presented anything to objectively support his claim that impeachment material could have been obtained from these records, nor has he provided any explanation for this failure. So for the reasons stated here, as well as those in the people's brief, we ask that you affirm the dismissal of the defendant's petition. Mr. Jackson, final word? Thank you. So in the course of the State's entire argument, in the briefs and here today, the State still has not engaged directly with the plain language of the aggravated criminal sexual assault statute. They are, of course, understandably quick to rely on CALI and the line of cases that has followed CALI, but they don't really want to talk about the statute because of those differences in the language of during the commission of the offense and in the same course of conduct. The State is expressing a lot of policy arguments and its preferences that this shawl should be wrapped in, that there should be this course of conduct, but the statute actually does contemplate that possibility, and the State charged it again. This is with subsection A4, that they're talking about, you know, the aggravating or, excuse me, the sexual assault occurring during. Let me ask you a question. Yeah. I mean, we're not bound by CALI. We can say CALI is completely wrong. We don't follow. But I think counsel raised a very good point that we're talking about ineffective assistance of appellate counsel. So a reasonable appellate counsel isn't going to say, oh, maybe I'll get a panel out of the first district that's not going to agree with CALI. That's not ineffective assistance. That was the law. What was the counter law that this appellate counsel looking at the law should have recognized and followed? Yeah. And so, yes, and I, of course, urge your honors to disagree with CALI and that line of cases. But who had disagreed then? Right. So at the time of the direct appeal and even at the time in the trial court proceedings, we had the amendments. We had the A7 amendments. We had A4 in the statute also, using during the course of conduct that language, not just sticking with during the commission of the offense. And then we also have Giraud, which was the Supreme Court case in 2012, which is not a factual analogy because it is dealing with a different subsection. Nonetheless, in paragraphs 12 and 13, the Supreme Court was very attentive to what the meaning of during the commission of the offense is. And what the court said is it means while the offender is engaging in the conduct that constitutes the offense. And so the state continues to rely on, as it did in its briefs, sort of more colloquial ideas and definitions of sexual assault or the use of force. You can look at this case and see, yes, on these facts, there was ongoing use of force in this case. That's not disputed. But the aggravating circumstance, again, did not exist until after the offense itself, the underlying criminal sexual assault. You know, the state relies heavily on Thomas, but it really just mostly blindly follows Cawley. It doesn't look under the hood at Cawley, but look at its very sparse, scarce analysis. And even there we have, yes, we have the aggravating events after certain acts of sexual penetration, and then many, many, many moments removed from a later one where they leave the scene, they go to one location, they go to another location, the defendant leaves. You know, even that, whether that is preceding the act of sexual penetration is also debatable. I think things got a little jumbled on the facts for the attempted aggravated criminal sexual assault count, for the penis-to-anus attempted sexual penetration. The state seems to take issue with not raising that in this appeal. I mean, there's a simple reason for that, and that's that Mr. Cross did not raise it in his petition. That said, that was, again, one of the many moments that came between the completion of the penis-to-vagina sexual penetration and the subsequent display of the knife. Briefly, back on the judicial confession thing, which I understand Your Honors, again, don't need to answer, though I think it might be beneficial to shed some light on this. It's not something that comes up a lot, so maybe there's not risk of it. But I think on remands, there's reason to think that perhaps the circuit court might want to rely on this again, or that the state, once it's allowed to be involved in the post-conviction proceedings, could try to invoke this doctrine. Kind of following up a little more on your question, Justice Mikva, about how do we achieve these sentencing goals of expressions of contrition and remorse without jeopardizing too many defendants from foregoing other legal rights? And I think that's why the bar for a judicial confession is, and certainly should be, but is, even just according to Green, a high bar. There is not, you know, it's a substitute for proof at trial. It's not enough to be saying things that could be consistent with the state's evidence. It's more detailed and it's more specific than that. My last comment, then, is just on the prejudice aspects, kind of wrapping back around to aggravated criminal sexual assault prejudice. The count of aggravated criminal sexual assault that would replace this count five does not include that add-on. I just want to be clear about that. So in the event that that would substitute, it would not, I just want to emphasize and reiterate, it would not be lawful for a judge to increase the sentence for the crime up to account for the loss of that aggravation, that 10 years of aggravation. So for all the reasons in the briefs and today, Mr. Cross asks this Court to reverse and remand for further post-conviction proceedings. Thank you. Thank you, counsel. May I be taken under advisement? And with that, we're adjourned.